UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| ESSIE GOODE, | PLAINTIFF |
| VERSUS | CIVIL ACTION NO. 2:21-CV-152-RPM |
| EARLY ENCOUNTERS, INC., | DEFENDANT |

### ORDER GRANTING IN PART MOTION TO DISMISS

### I. INTRODUCTION

Before the Court is Defendant Early Encounters, Inc.'s ("Early Encounters") motion for partial dismissal of Plaintiff Essie Goode's ("Goode's") Complaint. Doc. [11]. In support, Early Encounters first argues that Goode failed to exhaust claims of race-related discrimination, retaliation, harassment, and hostile work environment. *Id.*, at 2–4. Second, Early Encounters argues that Goode failed to state a claim under the Mississippi Tort Claims Act ("MTCA"). *Id.*, at 4–5. Goode has filed a response in opposition. Doc. [14].

### II.   Relevant Background

### A.   Equal Employment Opportunity Commission ("EEOC") Charge

On August 12, 2020, Goode filed an EEOC Intake Questionnaire containing the following allegations. Doc. [14], Ex. 1. In the 1990s, Early Encounters hired Goode, who is African American, as a teacher. Doc. [14], Ex. 1, at 1. By early 2020, Goode had risen to the position of Assistant Director. *Ibid.* In March 2020, however, Goode was laid off after Early Encounters temporarily closed due to the COVID–19 pandemic. *Id.*, Ex. 1, at 10. On May 13, 2020, Early Encounters Director Lynn Robinson ("Robinson") emailed laid-off staff, including Goode, to inform them that Early Encounters intended to reopen on June 15, 2020. *Ibid.* She added that

staff would need to reapply because Early Encounters would only bring back some employees due to pandemic-related economic costs. Doc. [14], Ex. 1, at 12.

Goode reapplied for her former position and was rehired. Doc. [14], Ex. 1, at 5. After being rehired, Goode discovered that she needed emergency thyroid surgery. *Ibid.* As part of her preoperative care, Goode was directed to obtain a COVID-19 test and quarantine before surgery. *Ibid.* On June 15, 2020, Goode received a COVID-19 test; on that same date, Robinson asked Goode to come into work. *Ibid.* In anticipation of her impending surgery, Goode declined. *Ibid.* On June 17, 2020, Early Encounters, through Robinson, sent a letter to Goode that purported to revoke its offer to rehire her. *Id.*, Ex. 1, at 2, 5, 9. According to Goode, Early Encounters discriminated against her because of her impending surgery. Doc. [12], Ex. 1.

Goode further alleged that Early Encounters' motivation for firing her was not limited to disability. She also asserted that Early Encounters fired her based on race. Doc. [14], Ex. 1, at 2–3. To support this accusation, Goode alleged that Robinson stated that Early Encounters was "racial[ly] imbalanced" because it employed "too many" black employees. *Id.*, Ex. 1, at 2, 7, 22. Goode also identified a white coworker, Rose Brown ("Brown"), who injured her foot around the same time as Goode underwent surgery. *Id.*, at 2, 5. Brown was unable to return to work until August 2020–i.e., for a longer period of time than Goode. *Ibid.* Unlike Goode, however, Brown was not fired. *Ibid.*

On November 3, 2020, Goode filed a verified formal Charge of Discrimination ("formal charge"). Doc. [12], Ex. 1. In the charge, Goode alleged that Early Encounters discriminated against her based on race and disability. *Ibid.* She also checked the box for "retaliation." *Ibid.* In full, Goode stated:

> In or around 1992, I was hired as a [t]eacher. I most recently held the position of Assistant Director. I was discharged because of my disability and race. I am

> African American. On or about June 12, 2020, I informed the Director, Lynn Robinson, of my need for emergency surgery. As part of the pre-op process, I was instructed to take a COVID test and quarantine until the scheduled surgery on June 17, 2020. The Respondent refused to provide an accommodation (leave) and I was discharged on or about June 19, 2020. I was discriminated against in violation of Title I of the Americans with Disabilities Act Amendments Act of 2008 and Title VII of the Civil Rights Act of 1964, as amended.
>
> [Doc. [12], Ex. 1.]

After the EEOC terminated its investigation, Goode received a right to sue letter. Doc. [1], Ex. 2.

**B. Complaint**

In her Complaint, Goode set forth the following factual allegations. Doc. [1]. In 2019, Early Encounters hired Robinson as a Director; it "reaffirmed" her position in February 2020. Doc. [1], at 3. While Goode was an Assistant Director, she was assigned duties falling within Robinson's job description. *Id.*, at 3–4.

In 2019, Robinson allegedly told nonparty Carly Owen ("Owen") that Early Encounters' staff was "racial[ly] imbalance[d]." Doc. [1], at 3. According to Robinson, Early Encounters employed too many blacks and not enough whites; Robinson "plan[ned] to change" this racial imbalance. *Ibid.* Owen reported these statements to her superior, Goode, who filed a grievance with Early Encounters' Board president Melissa Thompson. *Ibid.* After Goode filed the grievance, Robinson allegedly created a hostile work environment for Goode. *Ibid.* For example, Robinson allegedly threatened to fire Goode's granddaughter, who is black, and replace her with a white teacher. *Id.*, at 3–4.

Subsequently, Goode alleges, Robinson made statements and took actions that betrayed a discriminatory attitude. First, Robinson berated minority teachers in front of students and the public. Doc. [1], at 4. She did not act in this manner with white teachers. *Ibid.* Robinson also allegedly stated "bless your cotton-picking heart" to a child. *Id.*, at 4.

In February 2020, Tasha Betts ("Betts"), a black teacher, got into an altercation with Tina MacDonald ("MacDonald"), a white teacher. *Id.*, at 4–5. After the incident, Robinson decided that only Betts should be terminated; Robinson directed Goode to fire Betts. *Id.*, at 4. Goode refused to do so on the grounds that firing Betts would be discriminatory unless MacDonald was also fired. *Id.*, at 4. Thereafter, Robinson allegedly informed Pastor Bruce Case ("Pastor Case") about Goode's refusal. *Id.*, at 5. Pastor Case then stripped Goode of her supervisory responsibilities. *Ibid.*

### III. Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "must accept all well-pleaded facts as true, and [] view them in the light most favorable to the plaintiff." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* "Threadbare recitals of the elements of a cause of action, [however,] supported by mere conclusory statements, do not suffice[]" as factual allegations and are viewed instead as legal conclusions couched as factual allegations. *Ibid.* Finally, the Court's review encompasses: "'the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quotation omitted).[1]

### IV. Analysis

#### A. Failure to Exhaust

##### i. Law

Before proceeding with a Title VII or Americans with Disabilities Act ("ADA") claim in federal court, a plaintiff must exhaust his or her administrative remedies. *Davis*, 893 F.3d at 303. To exhaust, "a plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citation omitted). Additionally, "a claim generally must arise out of the plaintiff's EEOC charge." *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). "When analyzing whether a plaintiff has exhausted a claim, . . . 'the scope of an EEOC complaint should be construed liberally.'" *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Ibid.* "To balance these considerations, 'this court interprets what is properly embraced in review of a Title[] VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quotation omitted). To make this determination, the

---

[1] While both parties attached documents falling outside of the Complaint, these documents only encompass Goode's EEOC Intake Questionnaire and formal charge (collectively, "Amended Charge"). Doc. [12], Ex. 1; [14], Ex. 1. Since these filings are public records and their authenticity is not in question, the Court has taken judicial notice of them. *See*, *e.g.*, *Garland v. Kosciusko Sch. Dist.*, No. 3:19–CV–592–KHJ–LGI, 2021 WL 214678, at *2 (S.D. Miss. Jan. 21, 2021) (judicial notice of formal charge); *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 414 (E.D. La. 2016) (judicial notice of EEOC Intake Questionnaire).

Court engages in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quotation omitted).

ii.  **Threshold Issue:** **EEOC Intake Questionnaire**

Before addressing the merits of Early Encounters' motion, the Court briefly addresses whether Goode's EEOC Intake Questionnaire is a charge.[2] Under Supreme Court precedent, an EEOC Intake Questionnaire may qualify as a charge if two prerequisites are met. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402, 128 S.Ct. 1147, 1158, 170 L.Ed.2d 10 (2008). First, the EEOC Intake Questionnaire must "satisfy the EEOC's charge-filing requirements." *EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 753–54 (5th Cir. 2020) (quotation omitted). These charge-filing requirements encompass "the name and contact information of the person making the charge, the same information of the accused individuals, a factual statement of the allegations, the size of the employer, . . . disclosure of whether the allegations have already been brought to a state or local agency[,]" *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337–38 (5th Cir. 2021) (citing 9 C.F.R. § 1601.12(a)), and must "be in writing . . .[,] signed[,] and . . . verified[,]" 29 C.F.R. § 1601.9. Second, the Court must be able to reasonably construe the purported charge "'as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.'" *Vantage Energy Servs., Inc.*, 954 F.3d at 753–54 (quoting *Holowecki*, 552 U.S. at 402, 128 S.Ct. 1147).

Here, Goode's EEOC Intake Questionnaire plainly meets the EEOC's notice-related regulatory requirements. Doc. [14], Ex. 1; 29 C.F.R. § 1601.12(a). Furthermore, Goode checked the box on her questionnaire stating, "I want to file a charge of discrimination, and I authorize

---

[2] Early Encounters seems to concede this point in its reply brief. *See* Doc. [15].

the EEOC to look into the discrimination I described above." Doc. [14], Ex. 1, at 4. This is enough to meet the request-to-act requirement. *Vantage Energy Servs., Inc.*, 954 F.3d at 754; *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 113 (3d Cir. 2014). Finally, while Goode's EEOC Intake Questionnaire is itself unverified, an unverified charge may later be amended to comply with the verification requirement, 29 C.F.R. § 1601.12(b), through, *inter alia*, the filing of a verified EEOC Form 5, *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002).[3] Goode's formal charge is a verified EEOC Form 5. It was filed after Goode's EEOC Intake Questionnaire and addresses the same subject-matter. Accordingly, Goode's formal charge amended her EEOC Intake Questionnaire to meet the verification requirement. Doc. [14], Ex. 1. *See also* 29 C.F.R. § 1601.12; *Edelman*, 535 U.S. at 107, 122 S.Ct. 1145. For these reasons, Goode's EEOC Intake Questionnaire qualifies as a charge.

### iii.     Merits

Early Encounters argues that Goode did not exhaust any claim related to disparate treatment based on race. Doc. [12], at 4. In support, Early Encounters first argues that Goode failed to include any facts supporting such a claim in her Amended Charge. *Ibid.* The Court disagrees insofar as it relates to Goode's June 2020 termination/offer revocation. Most obviously, the Amended Charge specifically states that Goode "was discharged because of . . . [her] . . . race" in June 2020; she also specified that she is "African American." Doc. [12], Ex. 1 (emphasis added).

Goode elaborated on this assertion with specific examples. She identified Robinson's purported "racial imbalance" statement. Doc. [14], Ex. 1, at 7. Goode further explained that Robinson did not terminate Brown, a similarly-situated white employee, although she was going to be absent due to injury for a longer period of time than Goode. *Id.*, Ex. 1, at 5-6. Goode further

---

[3] *See also Conner v. Louisiana Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007); *Ray v. Dufresne Spencer Grp., LLC*, No. 1:17–CV–71–RP, 2018 WL 356208, at *4–*5 (N.D. Miss. Jan. 10, 2018).

7

identified two individuals who could demonstrate that Robinson is "racist." *Id.*, Ex. 1, at 4. Finally, Goode pointed out that Robinson sent the termination letter to Goode. *Id.*, Ex. 1, at 2. Considering the above, it is reasonable to expect that an EEOC investigation into disparate treatment on the basis of race would grow out of Goode's June 2020 termination allegations. *Jennings*, 11 F.4th at 342.

Second, Early Encounters argues that any disparate treatment claim premised on race falls outside of the temporal scope of Goode's Amended Charge. Doc. [12], at 4. Specifically, Early Encounters identifies Robinson's alleged statements about racial imbalance in June 2019. *Ibid.* Goode did not file her Amended Charge until August 12, 2020. This statement was made more than a year before Goode filed her Amended Charge; therefore, Early Encounters is correct that Goode cannot sustain an independent claim based on the statement made in June 2019. 42 U.S.C. § 2000e–5(e)(1). Nevertheless, Goode is free to contextualize and support any exhausted claim with the June 2019 statement. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Finally, Early Encounters argues that Goode's Complaint does not track her Amended Charge insofar as it relates to race. Doc. [12], at 4. However, Goode did not need to state a *prima facie* discrimination case, "check a certain box," or "recite a specific incantation" in her Amended Charge. *Pacheco*, 448 F.3d at 792–93 (quoting *Sanchez*, 431 F.2d at 463). This argument fails.[4]

**B. MTCA**

Next, Early Encounters argues that Goode cannot sue Early Encounters under the MTCA because Early Encounters is a private entity. Doc. [12], at 4–5. In response, Goode concedes that

---

[4] For the reasons stated below in connection with shotgun pleadings, the Court is unable to reach Early Encounters' motion insofar as it addresses any retaliation, harassment, or hostile work environment claims. Doc. [12], at 4.

Early Encounters is such an entity and, therefore, cannot be sued under the MTCA. Doc. [14], at 6. Instead, Goode attempts to clarify that she is asserting a wrongful discharge claim against Early Encounters under *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603 (Miss. 1993). Doc. [1], at 8; [14]. However, "[i]t is not enough for . . . [Goode] to clarify the nature of h[er] allegations in h[er] brief [.]" *Langston v. San Jacinto Jr. Coll.*, 25 F. Supp. 3d 1009, 1016 (S.D. Tex. 2014) (citation omitted). As always, the Court is limited to reviewing the Complaint. *Funk*, 631 F.3d at 783.

In substance, the relevant Count states "Goode was wrongfully discharged and/or demoted to Assistant Director in name only without duties because [Goode] opposed the discriminatory actions of Robinson." Doc. [1], at 8. Nothing more of substance is set forth in connection with this Count. *Ibid.* While this language may be ambiguous within itself, Goode entitled the claim "WRONGFUL DISCHARGE AND/OR DEMOTION UNDER THE *MISSISSIPPI TORT ACT*." *Id.* (emphasis added). In addition to referencing the "Mississippi Tort Act," Goode alleged that her claim arose under the "Mississippi tort statutes." Doc. [1], at 2. However, a *McArn* claim is a judicially-created, common law claim. *See, e.g.*, *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So.3d 216, 218 (Miss. 2015).

In light of the above, the Court concludes that Goode's claim must be **DISMISSED WITH PREJUDICE** insofar as it arises under the MTCA. The parties agree that Early Encounters is a private entity that is not covered by the MTCA. Cf. *Thompson v. McDonald Transit Assocs., Inc.*, 440 F. Supp. 2d 530, 532 (S.D. Miss. 2006).

### C. Shotgun Pleading

Finally, the Court raises the issue of shotgun pleading *sua sponte*. *See*, *e.g. Moore v. Mississippi Gaming Comm'n*, No. 115CV00013DMBDAS, 2015 WL 13019615, at *6 (N.D.

9

Miss. Nov. 2, 2015). "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing *Weiland*, 792 F.3d at 1321). Under Rule 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, Goode's Complaint opens with 24 paragraphs of factual allegations. Doc. [1], at 1–6. These allegations are coherent. *Ibid.* However, Goode's Complaint merely incorporates by reference all facts into multiple single-sentence Counts. Doc. [1], at 6–8. Ultimately, it is Goode's obligation to place Early Encounters (and the Court) on notice about her claims. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 10(b). Her shotgun pleading fails to do so. Accordingly, the Court will afford Goode the opportunity to file an amended complaint that conforms to the pleading requirements under the federal rules.

### V.     Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that Early Encounters' [11] Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Early Encounters' [11] Motion to Dismiss is **GRANTED** to the extent that Goode has failed to state an MTCA claim. In all other respects, Early Encounters' [11] Motion to Dismiss is **DENIED**.

**IT IS FURTHER ORDERED** that Goode shall have until **October 27, 2022**, to file an amended complaint consistent with the provisions outlined in this Order.  **Plaintiff is cautioned that failure to file a proper amended complaint within the time allotted may result in dismissal of her lawsuit.**

**SO ORDERED AND ADJUDGED**, this the 27th day of September 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE